UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICIA TOWNSEND,

                Plaintiff,

    -v-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, DEPUTY SUPERINTENDENT
JAMES LINDSAY and SUPERINTENDENT
UNGER,

                Defendant.

DECISION AND ORDER

09-CV-6018 CJS

---

APPEARANCES

For Plaintiff:            Christina A. Agola, Esq.
                          Christina Agola PLLC
                          1415 Monroe Avenue
                          Brighton, New York 14618

For Defendant:         J. Richard Benitez, Esq.
                          NYS Attorney General's Office
                          Department of Law
                          144 Exchange Boulevard
                          Rochester, New York 14614

INTRODUCTION

This is an action alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983 ("Section 1983"). Now before the Court is Defendant's Motion for Summary Judgment (Docket No. [#21]). The application is granted in part and denied in part.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most-favorable to Plaintiff. At all relevant times Plaintiff worked for the New York State

Department of Corrections and Community Supervision (DOCCS) as an Education Supervisor. Plaintiff's duties included assessing inmates' education levels and assigning them to particular classes, administering GED exams, supervising teachers and making quarterly reports about the Education Department.

In or about 2003, Plaintiff was assigned to work at Orleans Correctional Facility. At various times at Orleans, Plaintiff was also designated as Acting Deputy Superintendent for Programs, to act in the Deputy Superintendent's absence. Defendant David Unger was the Superintendent of Orleans for approximately three and one-half years, between 2004 and 2007. During the first year or so of Unger's tenure at Orleans, until 2005, William Smith was Deputy Superintendent for Programs, in which capacity he was responsible for overseeing the Education Department. Smith was therefore Plaintiff's immediate supervisor, and he and Plaintiff occasionally socialized outside of work, along with their respective spouses. According to Smith, Unger incorrectly believed that Plaintiff was romantically interested in Smith, and he asked Smith, "[W]hy is Pat interested in you? You're ten years older than me . . . I could do more for her than you." Smith Aff. ¶ 3. Plaintiff alleges that Unger "constantly" told her that he wanted a romantic relationship with her, but she "politely declined his advances." Pl. Stmt. of Additional Facts ¶ 6.

After this rejection, Plaintiff maintains, Unger began to treat her differently. Specifically, she maintains that Unger took the following actions against her: 1) he spread false rumors that she "was engaged in an illicit sexual affair;" 2) he told her not to have lunch with any male co-worker, Pl. Stmt. of Additional Facts at ¶ ¶ 7 & 9; 3) he yelled at her for having lunch with Smith; 4) he told her that under the collective bargaining agreement, she

was only entitled to a twenty-minute lunch in her work area, but did not raise that issue with male employees who left the facility for lunch; 5) he falsely accused her of falsifying her time records;[1] 6) he told her that "people around the state" were talking about her negatively; 7) he told her that she could not go on rounds at the prison with anyone but him, and more specifically, that she could not go on rounds with Smith; and 8) after an inmate wrote a letter threatening to sexually assault her, he banned her from using her office inside the secure prisoner area,[2] and assigned her to an office in the facility's administrative building, away from the classrooms, teachers and inmates, where she was unable to perform her teaching and supervisory duties, for a period of four months, during which an investigation was purportedly being conducted, and during which he did not communicate with her.

At the end of 2005, Smith left his position as Deputy Superintendent for Programs at Orleans. In or about January 2006, he was replaced by Defendant James Lindsay. Plaintiff suspects, but cannot prove, that upon Lindsay's arrival at Orleans, Unger communicated false information about her to him, since Lindsay immediately took a negative attitude toward her. Lindsay denies that he did anything improper toward Plaintiff, but he indicates that he had heard a suggestion that Smith and Plaintiff were romantically involved from someone at Groveland Correctional Facility, where he worked prior to transferring to Orleans. Lindsay Dep. at pp. 54-55 ("Someone asked me a question, what's this about Bill Smith and Pat.").

---

[1] Smith indicates that Unger persisted in accusing Plaintiff of falsifying her time records even after he showed Unger Plaintiff's time records, which showed that she had not mis-reported her time. Smith Aff. ¶¶ 7-9.

[2] Unger maintains that he never completely barred Plaintiff from using her usual office inside the secure area of the facility, but insisted that if she went into the secure area, she had to be accompanied by him or by a Deputy Superintendent. Unger Dep. at p. 51. Plaintiff disputes that, and insists that she was not permitted inside the secure area at all.

Lindsay maintains that he did not believe the accusation. *Id*. at 55.  In any event, Plaintiff alleges that Lindsay took the following actions toward her: 1) he told her that she was never allowed to sit behind his desk or use his computer, even though she was designated at Acting Superintendent in his absence; 2) he told employees that Plaintiff was trying to "sleep her way to the top," but he was not going to let that happen; 3) at a staff meeting he did not rebuke two female employees who were spreading a rumor that Plaintiff frequented "every motel in the area," and after she complained about it to him, he told her, "get over it, people talk;" 4) he undermined her supervisory authority over her staff, by giving contrary instructions to a teacher under Plaintiff's supervision, Linda Robinson, and by forbidding her to take disciplinary action against Robinson; 5) during a meeting he prevented her from raising issues relative to Robinson, but permitted male supervisors to discuss issues concerning their employees; 6) he (or possibly Unger) removed Plaintiff's name from a list of Core Leaders for Accreditation that was reported to DOCCS Central Office in Albany; and 7) he removed Plaintiff from her position of Acting Deputy Superintendent for a period of eleven months.

Plaintiff indicates that she complained directly to Unger and Lindsay about their behavior, and that she also complained about them to supervisory officials at DOCSS, including Assistant Director of Education John Durkes, Diversity Management and Labor Relations Specialist Mary Mayville, Educational Director Linda Holman, Deputy Commissioner John Nuttall and Commissioner Ray Medina, but none of those persons took any remedial action.  Plaintiff indicates that when she complained, she did not expressly

4

indicate that she was being treated differently because she was a woman, since she thought that was obvious. *See, e.g.*, Pl. Dep. at pp. 157-158.

In June 2007, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC). In July 2007, Plaintiff filed another EEOC complaint. Plaintiff maintains that Lindsay later ordered her not to make any further complaints against Unger.

On January 13, 2009, Plaintiff commenced this action. Plaintiff succinctly describes her claims in this case as follows: "Plaintiff claims that she was subject to a hostile environment based on sex by her supervisors Unger and Lindsay; that she was denied the equal protection of the law by being submitted to that form of discrimination; [and] that she was subject to retaliation as a result of engaging in protected activity." Pl. Memo of Law [#25-1] at p. 5.

On November 21, 2011, Defendant filed the subject motion for summary judgment.[3] As to the Title VII claims, Defendant maintains that Plaintiff cannot establish a prima facie case of either discrimination or retaliation, because she cannot show that she suffered an adverse employment action under circumstances giving rise to an inference of sex-based discrimination or retaliation. As for the Section 1983 claims, Defendant contends that they are precluded by Title VII.

Plaintiff disagrees, and maintains that Defendants failed to meet their initial burden on a summary judgment motion. Defendants did not submit reply papers, though they were

---

[3]The Court notes with disapproval that, apparently as a result of "cut and paste" drafting, Defendants' memorandum of law contains a paragraph involving a motion to dismiss by "SUNY College at Geneseo" in an unrelated case. See, Def. Memo of Law [#21-1] at p. 7.

afforded the opportunity to do so. On September 12, 2012, counsel for the parties appeared before the undersigned for oral argument of the motion.

## DISCUSSION

*Rule 56*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted). However, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

*Exclusion of Certain Evidence Offered to Defeat Summary Judgment*

"[I]t is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) (citations omitted). Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) (citations omitted).

In that regard, Plaintiff submitted an affidavit in opposition to summary judgment. This affidavit was notarized and presumably prepared by her attorney, Christina A. Agola , Esq. In her affidavit, Plaintiff states unequivocally that she personally heard Lindsay make this statement: "I heard Lindsay talking to several people about how I 'was trying to sleep [my] way to the top and he was not going to let that happen." Townsend Affidavit ¶ 30. This affidavit, however, is contrary to her sworn deposition testimony, in which she testified under oath as follows:

> A. Soon after that meeting, I heard that he was in the guidance area. Jim Lindsay was a guidance counselor before he was promoted, so he knows the senior counselors that are at that facility. He was over there talking to several people about how he heard I was trying to sleep my way to the top and he was not going to let that happen, and I told him that **that came back to me** and I told him I wanted it stopped. He said he'll talk to whoever he wants and he can say anything about me. He also said he didn't recall saying that and I told him that **they did recall it.** Q. Who's 'they'? A. Tim Crowley, Jose Reyes, Dave Waiter, and Doug Bower; those were the people in the conversation.

Townsend Deposition at pp. 86-87, emphasis added. Obviously, how Plaintiff acquired her knowledge of Lindsay's alleged comment is a significant fact in this lawsuit, and therefore her contradictory accounts, in the Court's view, can not be attributed to confusion or inadvertence.[4] Consequently, the Court will disregard the section of Plaintiff's affidavit which contradicts her sworn deposition testimony.

*Title VII*

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006). "Title VII is not a general civility code for the American workplace; it prohibits only harassment that is discriminatory." *Marshall v. NYC Bd. of Elections*, No. 07-4561-cv, 322 Fed.Appx. 17, 2009 WL 928083 at *19 (2d Cir. Apr. 7, 2009) (citation and internal quotation marks omitted).

---

[4]The Court again admonishes Ms. Agola, as it has in the past, about misrepresenting the record while opposing a summary judgment motion. *See, e.g., Colombo v. East Irondequoit Cent. Sch.*, No. 07-CV-6270 CJS, 2010 WL 6004378 at * (Dec. 17, 2010) (reminding Ms. Agola of her obligations under FRCP 11(b) "with regard to factual representations made to the Court.").

*Title VII Hostile Environment Claim*

The legal standards for a hostile environment claim are well settled:

> In order to establish a hostile work environment claim ... a plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive. The plaintiff must show more than a few isolated incidents of racial enmity, although a hostile work environment can also be established through evidence of a single incident of harassment that is extraordinarily severe.

*Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723–724 (2d Cir.2010) (citations and internal quotation marks omitted); *see also, Fitzgerald v. Henderson*, 251 F.3d 345, (2d Cir. 2001) ("If a rational juror could infer that a reasonable employee would have viewed a given series of events as materially worsening her working conditions, summary judgment dismissing her hostile work environment claim on the ground of lack of an adverse employment decision is inappropriate.").

A plaintiff may, but is not required to, demonstrate that she suffered a tangible employment action as part of a hostile environment claim. *See, Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (Indicating that a hostile environment can be proven, "notwithstanding the fact that the employer takes no tangible employment action.").

In a sex discrimination action such as this, the female plaintiff must prove that the hostile environment was based on her gender:

> It is axiomatic that to prevail on a claim of hostile work environment based on gender discrimination, the plaintiff must establish that the abuse was based on her gender. The harassing conduct need not be motivated by sexual desire, however, so long as it was motivated by gender. Further, facially neutral incidents may be included among the "totality of the circumstances" that courts

consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory. Circumstantial evidence that facially sex-neutral incidents were part of a pattern of discrimination on the basis of gender may consist of evidence that the same individual engaged in multiple acts of harassment, some overtly sexual and some not. In *Raniola* [*v. Bratton*, 243 F.3d 610 (2d Cir. 2001)], for example, we concluded that, given proof of instances of overt gender hostility by the supervisor of the female plaintiff, a rational juror could permissibly infer that his entire alleged pattern of harassment against her was motivated by her gender, even though some of the harassment was not facially sex-based. Thus, the relevant circumstances in *Raniola* included not only offensive sex-based remarks, but also, *inter alia*, one dire facially gender-neutral threat of physical harm by the supervisor who had made those remarks. <u>In *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir.2001), *cert. denied*, 536 U.S. 922, 122 S.Ct. 2586, 153 L.Ed.2d 776 (2002), we held that a claim of gender-based hostile work environment (as well as an "embedded" claim of retaliation) may be premised on evidence that a supervisor heaped abuse on the plaintiff because she had rejected his sexual advances. See 251 F.3d at 361[.]</u> So long as there is some evidentiary basis for inferring that facially sex-neutral incidents were motivated by the plaintiff's gender, the ultimate question of whether such abuse was "because of" the plaintiff's gender . . . is a question of fact for the factfinder.

In sum, the question of whether considerations of the plaintiff's sex caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, and an invidious discriminatory purpose may often be inferred from the totality of the relevant facts. Thus, especially in the context of a claim of sexual harassment, where state of mind and intent are at issue, the court should not view the record in piecemeal fashion, and summary judgment should be used sparingly.

*Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547-548 (2d Cir. 2010) (emphasis added, citations and internal quotation marks omitted).

In this case, Defendants argue that Plaintiff cannot show that the alleged hostile environment she experienced was related to her gender. (Defendants do not argue that the

alleged adverse actions were insufficiently severe or pervasive.). However, the Court disagrees. Plaintiff has indicated that Unger began his hostile actions toward her after she declined his sexual advances, which is sufficient to suggest that he was motivated by her gender. *See, Kaytor v. Electric Boat Corp.*, 609 F.3d at 548. Moreover, Lindsay is alleged to have made, and permitted others to make, comments indicating that Plaintiff was sexually promiscuous, and that she was attempting to "sleep her way to the top." There is no indication that similar comments were made about males. Accordingly, in the predominantly male setting in which the parties worked, such comments are sufficient to suggest that Lindsay was motivated by Plaintiff's gender. *See, e.g., Dellefave v. Access Temporaries, Inc.*, No. 99 CIV. 6098 RWS, 2001 WL 25745 at *7 (S.D.N.Y. Jan. 10, 2001) ("Even if embarrassing or even humiliating, a statement that an employee is having a consensual relationship with a co-worker cannot be construed as discrimination or harassment on the basis of sex absent some additional showing, such as that the plaintiff was singled out for such comments because of his or her gender.").

*Title VII Retaliation Claim*

Defendants contend that Plaintiff's retaliation claim must fail, though their argument in that regard consists only of a single sentence: "There simply is no evidence that the Plaintiff suffered a materially adverse action, let alone one causal connection between a protected activity and a materially adverse action." [sic] Def. Memo of Law at p. 7. The legal principles applicable to retaliation claims under Title VII are clear:

> "Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must

> establish a prima facie case of retaliation by showing: " '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.' " *Jute*, 420 F.3d at 173 (*quoting McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir.2001)). The plaintiff's burden in this regard is "*de minimis*," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id*. (internal quotation marks omitted).
>
> If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Id*. The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id*. If so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id*. A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

*Hicks v. Baines*, 593 F.3d 159, 164-165 (2d Cir. 2010). To make a prima facie showing of an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d at 207 (*quoting Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)).

In the instant case, Defendants do not dispute that Plaintiff engaged in protected activity,[5] or that they were aware of such activity. At least, those points are not mentioned in Defendants' brief. Instead, Defendants seem to argue that Plaintiff cannot establish the third and fourth elements of her prima facie case – that she suffered an adverse employment

---

[5]While Defendants do not raise this issue, the Court is unclear about the specifics of Plaintiff's alleged protected activity, such as the content of her complaints and the dates that she made them.

action, and that there is a causal nexus between the protected activity and the adverse action. However, Defendants have not offered any specific substantive discussion on these points, and the Court declines to raise arguments for them. *See, Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000) ("While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.") (citation omitted). Accordingly, the Court finds that Defendants have failed to carry their initial burden of demonstrating that they are entitled to summary judgment on the Title VII retaliation claim.

*Section 1983 Claims*

Defendants maintain that Plaintiff's Section 1983 claims must be dismissed, though they again provide very little explanation for their argument. Specifically, Defendants state: "A Title VII Plaintiff may not use § 1983 simply to reassert a Title VII claim. Here, Plaintiff's retaliation claim is brought under Title VII and therefore is not cognizable as a § 1983 claim." Def. Memo of Law at p. 8 (citations omitted). Since this argument references only Plaintiff's First Amendment retaliation claim, it does not appear that Defendants are moving for summary judgment on Plaintiff's Equal Protection claim.

It is clear that "a Title VII plaintiff can [also] assert claims under Section 1983 for violations of rights not exclusively protected by Title VII." *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 142-143 (2d Cir. 1993), cert. den., 510 U.S. 1164, 114 S.Ct. 1189 (1994). In that regard,

> a § 1983 claim is not precluded by a concurrent Title VII claim, when the former is based on substantive rights distinct from Title VII. A plaintiff cannot

> use Section 1983 to gain perceived advantages not available to a Title VII claimant, but a plaintiff can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied.

*Id*. at 143 (citations omitted).  The issue here, therefore, is whether Plaintiff can establish her constitutional claims against Unger and Lindsay.  It is clear that the First Amendment retaliation claim cannot succeed because the speech for which Plaintiff claims she was retaliated against did not implicate matters of public concern, but only concerned her particular employment conditions. *Id*. ("Had Salpaugh's complaints to her supervisors implicated system-wide discrimination they would have unquestionably involved a matter of 'public concern.'  Here, however, there has been no violation of the First Amendment, because Saulpaugh's complaints were personal in nature and generally related to her own situation.") (citations and internal quotation marks omitted).  On the other hand, Plaintiff has come forward with evidence which could establish a Fourteenth Amendment Equal Protection claim, since intentional "sexual harassment of women constitutes disparate treatment because of gender, and is actionable under Section 1983." *Id*. at 144 ("This Court, like our sister circuits, has upheld a Section 1983 claim against a public official for improper sexual conduct toward an employee that created a hostile work environment.").

Plaintiff indicates that her Equal Protection claim is based upon the alleged sexually hostile work environment that she experienced. *See, Pl. Memo of Law* [#25-1] at p. 5 ("Plaintiff claims that she was subject to a hostile environment based on sex by her supervisors Unger and Lindsay; *that she was denied the equal protection of the law by being*

*submitted*[6] *[sic] to that form of discrimination*[.]") (emphasis added).  A hostile work environment based on sex can support a § 1983 Equal Protection claim. *See, Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (Finding that the plaintiff could assert a § 1983 Equal Protection claim based on a hostile work environment, stating that "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause," with some significant differences, not applicable here, such as statute of limitations, municipal liability standard, and intent.).  Therefore, the Equal Protection claims against Unger and Lindsay may go forward.

## CONCLUSION

Defendant's application for summary judgment [#21] is granted in part and denied in part.  The motion is granted as to the First Amendment claims against Unger and Lindsay, but is otherwise denied.  The Title VII hostile environment and retaliation claims, as well as the § 1983 Equal Protection claim, may proceed.  Counsel are directed to notify the Court in writing concerning the outcome of Court-ordered Alternative Dispute Resolution, upon which, if necessary, the Court will schedule a pre-trial conference.

SO ORDERED.

Dated:     September 28 , 2012
           Rochester, New York

                                          ENTER:

                                          /s/ Charles J. Siragusa
                                          CHARLES J. SIRAGUSA
                                          United States District Judge

---

[6] Plaintiff presumably meant to say "subjected."

*submitted*[6] *[sic] to that form of discrimination*[.]") (emphasis added).  A hostile work environment based on sex can support a § 1983 Equal Protection claim. *See, Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (Finding that the plaintiff could assert a § 1983 Equal Protection claim based on a hostile work environment, stating that "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause," with some significant differences, not applicable here, such as statute of limitations, municipal liability standard, and intent.).  Therefore, the Equal Protection claims against Unger and Lindsay may go forward.

## CONCLUSION

Defendant's application for summary judgment [#21] is granted in part and denied in part.  The motion is granted as to the First Amendment claims against Unger and Lindsay, but is otherwise denied.  The Title VII hostile environment and retaliation claims, as well as the § 1983 Equal Protection claim, may proceed.  Counsel are directed to notify the Court in writing concerning the outcome of Court-ordered Alternative Dispute Resolution, upon which, if necessary, the Court will schedule a pre-trial conference.

SO ORDERED.

Dated:     September 28 , 2012
           Rochester, New York

                                          ENTER:

                                          /s/ Charles J. Siragusa
                                          CHARLES J. SIRAGUSA
                                          United States District Judge

---

[6] Plaintiff presumably meant to say "subjected."